UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JOSEPH E. PERDUE,**

    **Plaintiff,**

v.                                                                       **CASE NO. 8:08-CV-633-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security Administration,**

    **Defendant.**
_____ /

## **FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") determining Plaintiff was no longer disabled as of May 1, 2004 due to medical improvement.

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

___

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 18).

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979). If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

The Social Security Act provides that an individual who has been awarded disability benefits may be determined to be no longer entitled to benefits upon a finding that there has been a medical improvement in the individual's impairment and that the individual is able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). Under the regulation, medical improvement is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled. . . ." 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s). . . ." Id. However, benefits cannot be terminated unless there is evidence of improvement to the extent that the plaintiff's disability has ceased. Simpson v. Schweiker, 691 F.2d 966, 969 (11th Cir. 1982).

The point of comparison for determining if there has been improvement is "the time of the most recent favorable decision." 20 C.F.R. § 404.1594(b)(7). Further, the ALJ must evaluate the prior medical evidence of disability. Williams v. Apfel, 73 F. Supp. 2d 1325, 1337 (M.D. Fla. 1999) (citation omitted). Without a comparison to the current condition, no adequate finding of improvement can be rendered. Id. Merely referring to the current evidence without performing a

comparison is insufficient. McAulay v. Heckler, 749 F.2d 1500, 1501 (11th Cir. 1985).

Upon introducing evidence that his or her condition has not changed since a prior disability determination, a plaintiff is entitled to a presumption of continuing disability. Williams, 73 F. Supp. 2d at 1337 (citation omitted). The Commissioner then bears the burden of demonstrating that sufficient medical improvement has enabled the plaintiff to undertake gainful activity. Id. (citation omitted).

## **Background**

On April 25, 2001, Plaintiff was found disabled as of August 8, 1998. (T 28) On May 24, 2004, however, a reviewer determined that Plaintiff's disabled status ended on May 1, 2004. (Id.) This determination was upheld upon reconsideration. (Id.) Plaintiff appealed and, representing himself without the assistance of counsel, appeared for an administrative hearing on December 6, 2006. (Id.) Fifty years old at the time of the hearing, Plaintiff has an eleventh grade education and past work experience as a drywall hanger and framer. (T 314, 316)[2]

In a February 26, 2007 decision, the ALJ concluded that Plaintiff's disability ended on May 1, 2004. (T 34) The ALJ found that Plaintiff retained the same impairments he had when he was found disabled in 2001, including status post lumbar laminectomy and fusion and hypertension, but with lessened severity that resulted in an increased residual functional capacity ("RFC"). (T 30, 32) Specifically, the ALJ found Plaintiff was capable of light work limited to 1) lifting/carrying twenty pounds occasionally and ten pounds frequently; 2) sitting for six hours, standing for six hours, or walking for six hours in an eight-hour workday with normal breaks; and 3) occasional climbing,

---

[2] The ALJ mistakenly said Plaintiff was fifty-one, rather than fifty, years old at the time of the ALJ's decision (T 33), however, this is not a significant difference.

3

balancing, stooping, kneeling, crouching and crawling with no climbing at unprotected heights. (T 31) The ALJ emphasized that diagnostic evidence showed a "solid fusion" resulting from a posterior spinal fusion ("PSF") and that Plaintiff had declined any additional surgery. (T 32) While finding Plaintiff unable to perform his past relevant work as a drywall hanger, the ALJ concluded that Plaintiff could perform restricted light work allowing for a sit/stand option such as an assembler, dispatcher, or cashier. (T 32-33) In doing so, the ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, as well as testimony by a Vocational Expert ("VE") affirming that these jobs would allow for a sit/stand option. (T 32-33, 325)

On April 17, 2007, Plaintiff asked the Appeals Council to review the ALJ's decision. (T 23-24) On May 19, 2007, Plaintiff was appointed counsel to aid him with his appeal. (T 22) On March 13, 2008, after considering both the record before the ALJ and supplemental evidence received from Plaintiff, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T 2-3)

Plaintiff alleges that the ALJ erred by 1) failing to obtain updated medical records from 2004 to 2006 and 2) failing to analyze whether Plaintiff had transferable skills from his work as a drywall hanger (Dkt. 19 at 10-14). Plaintiff further contends that the Appeals Council erroneously denied review of the ALJ's decision (Id. at 14-15).

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## Analysis

### I. Updated Medical Records

Plaintiff argues that the ALJ failed to comply with his "special duty" to protect Plaintiff from

4

prejudice caused by a lack of representation through the administrative hearing. Plaintiff generally contends that the ALJ ignored this obligation by failing to obtain updated medical records covering the period from July 14, 2004, when reconsideration of Plaintiff's application was denied (T 46), to December 6, 2006, the date of the administrative hearing (Dkt. 19 at 12). Specifically, Plaintiff maintains the ALJ should have obtained 1) a transcript of the March 20, 2003 deposition of Antonio Castellvi, M.D. ("Dr. Castellvi"); 2) 122 pages of medical records from Carlos Pagan, M.D. ("Dr. Pagan") dated August 2005 to July 2007; and 3) records from Vipul Karbaria, M.D. ("Dr. Karbaria") dated April 2007 to September 2007 (Dkt. 19 at 6-8).[3]

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam) (citations omitted). An ALJ has a "special duty" to develop a full and fair record where an unrepresented claimant does not waive the right to representation. Id. This special duty requires an ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Id. (citation and internal quotation marks omitted).

At the administrative hearing, which lasted twenty minutes (T 313, 326), Plaintiff acknowledged his written waiver of representation. (T 313) Consequently, "the ALJ did not have a special duty to develop the record." Robinson v. Astrue, 235 F. App'x 725, 727 (11th Cir. 2007) (per curiam) (unpublished). Nonetheless, the ALJ retained "an obligation to develop a full and fair record." Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam). Because Plaintiff

---

[3] Because the Appeals Council ultimately considered these records, Plaintiff's argument that the ALJ failed to fully develop the record may be moot. See Galino v. Comm'r of Soc. Sec., No. 6:08-CV-182-ORL-GJK, 2009 WL 890547, at *17 (M.D. Fla. Mar. 30, 2009) (finding claimant's argument that ALJ erred in failing to locate and introduce medical records was moot because any harm or prejudice was remedied by Appeals Council's subsequent consideration of the records).

waived his right to counsel, he must show "clear prejudice or unfairness caused by lack of counsel in order to prove that he was denied a full and fair hearing and is entitled to a remand to the Secretary." Id. at 1540 n.2 (citation and internal quotation marks omitted).

Although the ALJ did not obtain the records that Plaintiff submitted directly to the Appeals Council, the ALJ did obtain records from the period between May 30, 2001 and September 5, 2006. For instance, on May 30, 2001, Dr. Castellvi found Plaintiff "capable of performing light duty on a full-time basis with the following restrictions: No lifting over twenty pounds, must be able to change positions every hour, no overhead reaching on a regular basis, and no repeated bending, stooping, or squatting." (T 111-12) Dr. Castellvi reaffirmed these limitations on December 4, 2001 (T 109-10), December 3, 2002 (T 107-08), January 28, 2003 (T 104-05), February 25, 2003 (T 101-03), March 25, 2003 (only five days after the deposition) (T 99-100), and again on April 9, 2004. (T 97-98) Dr. Castellvi's March 25, 2003 treatment notes reflect that Plaintiff was "status post PSF which is healed" (T 100) and his April 9, 2004 treatment notes indicate that Plaintiff's PSF was intact and appeared solid. (T 98)

On February 10, 2003, Jerry Poklepovic, M.D. ("Dr. Poklepovic") performed a tomogram of Plaintiff's lumbar spine. (T 117) Dr. Poklepovic found bony fusions of the L5 and S1 spine levels with no instability. (Id.)

On April 2, 2004, Eve Jehle, M.D. ("Dr. Jehle") concluded that a radiological exam revealed no obvious abnormalities of Plaintiff's PSF. (T 114) Specifically, Dr. Jehle noted that Plaintiff had undergone a PSF at the L4 and L5 levels, that there was disc space narrowing at the L4-5 and L5-S1 levels, and that there was "no obvious evidence for loosening or other significant abnormality noted around the metallic screws." (Id.)

On July 11, 2004, J.D. Perez, M.D. ("Dr. Perez"), a non-examining physician consultant,

assessed Plaintiff's residual functional capacity. (T 126-33) Noting that an x-ray showed a solid fusion resulting from Plaintiff's PSF, Dr. Perez stated that there had been "definite" medical improvement in Plaintiff's condition. (T 128) Dr. Perez concluded that Plaintiff was capable of light work but, based on Dr. Castellvi's opinion, should avoid lifting over twenty pounds and avoid repeated stooping, bending, or squatting. (T 127, 132)

On April 20, 2005, Dr. Castellvi placed Plaintiff on "permanent light duty" with no lifting greater than twenty pounds and no repetitive bending, stooping, or squatting. (T 148)

On September 5, 2006, Dr. Pagan referred Plaintiff for evaluation and treatment for degeneration of lumbar or lumbosacral intervertebral disc.[4] (T 146)

Although the ALJ obtained records dated as late as September 5, 2006, Plaintiff contends that he was not afforded a full and fair hearing because the ALJ did not additionally obtain and consider those records that Plaintiff submitted directly to the Appeals Council.

### a. Dr. Castellvi's Deposition

At his March 20, 2003 deposition, Dr. Castellvi speculated that Plaintiff's PSF may not have healed at the L4-5 level and that further surgery would be necessary if that were the case.[5] (T 295-300) Nonetheless, he indicated that only a month earlier he placed Plaintiff on "light duty" work status with the condition that Plaintiff not lift more than twenty pounds, squat, reach, stoop, crawl, stand, walk, bend, climb, push, or pull. (T 297-98) When asked to clarify whether Plaintiff was

---

[4] Dr. Pagan referred Plaintiff pursuant to ICD-9 Code 722.52 (T 146), which covers degeneration of lumbar or lumbosacral intervertebral disc. See http://icd9cm.chrisendres.com (last visited August 31, 2009).

[5] Based on a three-dimensional CT scan of the lumbar spine performed on December 17, 2002 and tomogram studies done on February 11, 2003, Dr. Castellvi felt that there was a pseudoarthrosis - a fusion which had not healed. (T 292-95, 300)

capable of light duty work or merely sedentary work, Dr. Castellvi responded that Plaintiff could do light duty work with restrictions. (T 301)

Dr. Castellvi's testimony simply restates what was documented in his treatment notes: that Plaintiff was capable of light work with restrictions. Moreover, even if Dr. Castellvi's testimony had been available to the ALJ, it would not have been error for the ALJ to find Dr. Castellvi's treatment notes "persuasive" (T 32) given that notes post-dating the deposition indicate that Plaintiff's PSF was in fact healed or "solid." (T 98, 100) Consequently, Plaintiff has not shown that clear prejudice or unfairness was caused by the absence of Dr. Castellvi's testimony from the record.

### b. Dr. Pagan's Records

Dr. Pagan's supplemental records reflect that from 2005 to 2007 Plaintiff saw Dr. Pagan on several occasions and frequently requested medication refills. (T 151-273) Dr. Pagan consistently noted that Plaintiff suffered from low back pain and/or failed back syndrome. (T 167-68, 171, 173, 184, 201) Included in Dr. Pagan's records is a September 13, 2006 letter from Dennis Feldman, M.D. ("Dr. Feldman") reporting that Plaintiff's colonoscopy revealed diverticula scattered throughout the colon and internal hemorrhoids. (T 268) On October 12, 2006 and March 28, 2007, Dr. Pagan referred Plaintiff for pain management. (T 163, 201) Finally, in a June 7, 2007 letter that Dr. Pagan received from Plaintiff's counsel, Dr. Pagan was presented with the following statements:

> [1]    I believe that [Plaintiff] is not able to perform an 8 hour a day job, 5 days a week, based upon his symptoms of pain and sciatica.
>
> [2]    I believe that he is able to perform an 8 hour a day job, 5 days a week but in a sedentary capacity and only if he is able to sit and stand at his own leisure and that he cannot lift more than 5 - 10 lbs [frequently].

8

(T 151) On or about October 7, 2007[6], Dr. Pagan placed a check mark next to the first option with the note "open labor market." (Id.)

Notably absent from Dr. Pagan's records is any suggestion that Plaintiff was functionally limited from performing work consistent with the ALJ's RFC. As a result, these records do not undermine the ALJ's conclusion regarding Plaintiff's functional limitations. See Martinez v. Astrue, No. 8:08-CV-1134-T-TGW, 2009 WL 2163115, at *5 (M.D. Fla. July 20, 2009) ("It is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability.") Further, Dr. Pagan's check mark on the letter from Plaintiff's counsel reflects nothing more than a conclusion that Plaintiff was unable to work. Such conclusions, however, are reserved to the ALJ.[7] See Maffia v. Comm'r of Soc. Sec., 291 F. App'x 261, 263-64 (11th Cir. 2008) (per curiam) (unpublished). Consequently, Plaintiff has failed to show clear prejudice or unfairness from the ALJ's failure to consider Dr. Pagan's records.

   c.    **Dr. Kabaria's Records**

Dr. Kabaria's records document his treatment of Plaintiff from April 16, 2007 to September 24, 2007. (T 274-88) On five occasions, Plaintiff complained to Dr. Kabaria of low back pain and was treated with medications. (T 275-79) Notably, Dr. Kabaria never assigned Plaintiff any functional limitations.[8]

---

[6] Dr. Pagan indicated that he signed the form on the "7 day of 10, 2007" (T 151) which the court construes to be October 7, 2007.

[7] Moreover, the ALJ could not have obtained a copy of a letter that did not exist at the time he issued his opinion. The letter was sent to Dr. Pagan more than three months after the ALJ's February 26, 2007 decision. Accordingly, the letter has no bearing on whether Plaintiff received a full and fair hearing from the ALJ.

[8] The form routinely used by Dr. Kabaria includes a subsection titled "Work Status" that allows a physician to confirm or quantify various functional limitations. (T 275-79) For each record

9

Although Plaintiff contends that the ALJ "apparently made no effort to obtain the updated medical records on [Plaintiff]" (Dkt. 19 at 12), the treatment reflected in Dr. Kabaria's records did not occur until several months after the ALJ rendered his decision. Plaintiff was not deprived of a full and fair hearing by the ALJ's inability to secure records that did not exist.

II.  **Plaintiff's Transferable Skills**

Plaintiff next argues that the ALJ erred in concluding that Plaintiff was capable of working as an assembler, dispatcher, or cashier because there was no identification of any transferable skills from his prior work as a drywall hanger (Dkt. 19 at 13). Plaintiff maintains that he has "no experience with assembly work except hanging walls, nor any experience with the telephone/dispatcher equipment or even a cash register" (Id. at 14).

The ALJ did not discuss whether Plaintiff had transferable skills from his work as a drywall hanger. Rather, the ALJ stated that "[b]eginning on May 1, 2004, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (T 33)

The ALJ reasoned that as of May 1, 2004, Plaintiff had regained the functional capacity to perform light work but that Plaintiff could not return to his past, semi-skilled work as a drywall hanger. (T 31-32) The ALJ noted that Plaintiff 1) was a "younger individual" on May 1, 2004 but was closely approaching advanced age at the time of the ALJ's decision and 2) had a limited education and was able to communicate in English. (Id.) Considering these facts together, the ALJ reasoned that Plaintiff was not disabled pursuant to Medical-Vocational Rules 202.11 and 202.18.

---

at issue, Dr. Kabaria either marked this section as not applicable or did not mark it at all. (Id.)

(Id.)

Sections 202.11 and 202.18 of the Medical-Vocational Guidelines provide for a finding of "not disabled" where a claimant has an RFC for light work, is of advanced age or closely approaching advanced age, has limited or less education, and has experience performing skilled or semi-skilled work involving non-transferable skills. See 20 C.F.R. Part 404, Subpart P, App. 2. Given the ALJ's reliance on §§ 202.11 and 202.18 and his statement that the transferability of Plaintiff's job skills was not material, it is clear that the ALJ found Plaintiff did not have transferable skills. See Gibson v. Heckler, 762 F.2d 1516, 1520 n.6 (11th Cir. 1985) (reasoning that ALJ found claimant's work skills were not transferable where the ALJ relied on a grid matrix indicating non-transferability and stated that transferability was not "material" in light of the claimant's age, education, and RFC). Plaintiff does not dispute the ALJ's findings regarding his age, education, and previous work experience. Moreover, Plaintiff does not challenge the ALJ's RFC determination for light work but rather points to the lack of evidence that Plaintiff's skills as a drywall hanger were transferable (Dkt. 19 at 13-14). Plaintiff's argument that the ALJ should have analyzed his transferable skills simply overlooks that §§ 202.11 and 202.18 apply when skills are not transferable.[9]

Plaintiff's transferable skills were similarly not placed at issue when the ALJ questioned the VE. The ALJ asked the VE to identify work that could be performed by an individual closely approaching advanced age with the ability to do light work as restricted in the ALJ's ultimate RFC. (T 324) The VE responded that such an individual would be able to perform work as an assembler,

---

[9] Plaintiff also suggests that the ALJ should have found Plaintiff disabled to § 201.10 of the Medical-Vocational Guidelines (Dkt. 19 at 16). That section, however, only applies where an ALJ assigns an RFC for sedentary work. Here, the ALJ assigned an RFC for light work.

11

dispatcher, or cashier. (Id.) In reaching this conclusion, the VE did not assume that the hypothetical individual would have skills transferable from previous work experience.

In sum, the ALJ correctly determined that Plaintiff satisfied the conditions set forth in the Medical-Vocational Guidelines for a finding of "not disabled" regardless of the transferability of any skills Plaintiff might have retained from his work as a drywall hanger. The ALJ's conclusion that Plaintiff was capable of working as an assembler, dispatcher, or cashier was not predicated on Plaintiff's retention of skills from his prior work experience.

### III. The Appeals Council's Consideration of New Evidence

Plaintiff maintains that the Appeals Council failed to properly consider the materials it received from Plaintiff after the ALJ issued his decision, which include Dr. Castellvi's deposition transcript, Dr. Pagan's records, and Dr. Kabaria's records (Dkt. 19 at 14). Plaintiff contends that this evidence "clearly demonstrate[s] that [Plaintiff's] back surgery (upon which the Administration relies) was not entirely successful" (Id.). Plaintiff reasons that these materials provide "a clear ground for reversal of the administrative decision" and warrant "remand for full consideration of all the evidence, particularly that submitted to the Appeals Council" (Id. at 15).

"The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b)). New evidence is material when "a reasonable possibility exists that the new evidence would change the administrative result." Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998). In reviewing the Appeals Council's decision to deny review, a court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an

ALJ's decision." Id.

As stated above, the evidence submitted to the Appeals Council did not establish that Plaintiff was unable to perform light work consistent with the functional limitations prescribed by the ALJ; it is devoid of any discussion of Plaintiff's functional limitations. Dr. Castellvi's speculation as to the success of Plaintiff's PSF is not contrary to the record as a whole. Plaintiff's assertion that Dr. Castellvi's March 20, 2003 deposition testimony "demonstrated a major change in the doctor's estimation of [Plaintiff's] impairment" (Dkt. 19 at 15) is directly undermined by Dr. Castellvi's treatment notes from only five days after the deposition that, like the rest of Dr. Castellvi's records from 2001-2004, indicate Plaintiff was capable of light work with restrictions. (T 98-100). Moreover, neither Dr. Pagan nor Dr. Kabaria assigned Plaintiff functional limitations conflicting with those assigned by Dr. Castellvi. Because Plaintiff has not shown a reasonable possibility that the ALJ would have reached a different decision in light of the evidence first submitted to the Appeals Council, that evidence is not material and the Appeals Council did not err in denying review of the ALJ's decision. See e.g. Pritchett v. Comm'r, Soc. Sec. Admin., 315 F. App'x 806, 815 (11th Cir. 2009) (per curiam) (unpublished) (finding Appeals Council did not err in denying review of ALJ's decision where medical records submitted directly to Appeals Council "offered no evidence that reasonably could be expected to alter the ALJ's decision").

## **Conclusion**

Plaintiff has failed to demonstrate that the ALJ erred by not obtaining Plaintiff's updated records or by not analyzing whether Plaintiff had transferable skills from his past employment as a drywall hanger. Plaintiff has similarly failed to show that the Appeals Council erred in denying review of the ALJ's decision. The decision of the Commissioner reversing Plaintiff's disabled status is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)  The decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)  The Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 23rd day of September, 2009.

_____
ELIZABETH A JENKINS
United States Magistrate Judge